

# EXHIBIT D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF A.H. BECK FOUNDATION CO., INC., | § § § § | |
| Complainant, | § § § | Civil Action No. 2:21-cv-00071 |
| v. | § § | |
| WESTFIELD INSURANCE COMPANY, | § § | |
| Respondent. | § | |

**SPENCER AND WESTFIELD'S UNOPPOSED MOTION
TO COMPEL ARBITRATION AND STAY THE LITIGATION**

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §1 et seq,, Respondent Westfield Insurance Company ("Respondent" or "Westfield") and Spencer Construction, LLC ("Spencer or "Intervenor") (collectively referred to as "movants"), move the Court for an Order staying this litigation and compelling arbitration of the claims of Complainant United States of America, for the use and benefit of A.H. Beck Foundation Co. Inc. ("Complainant" or "Beck") in accordance with the mutually binding arbitration agreement signed by Complainant, which mandates arbitration of the claims identified by Complainant in its lawsuit. In support of its Unopposed Motion, Movants show the following:

**I.
Factual Background**

1. Beck and Spencer entered into a Subcontract agreement on or about February 5, 2021, for the construction of multiple bridges for U.S. Customs and Border Protection Agency including the Seco Creek bridge (Contract No. 70B01C20R00000152 and referenced as "Seco Creek 70B01C20R00000200 within the subcontract between Beck and Spencer) as well as Bridge 1130 (not involved in this lawsuit) and Bridge 1152 (not involved in this lawsuit) under which Beck was

to perform certain drilled shaft excavation work at the bridges, as more thoroughly specified in the Subcontract ("Subcontract"). The project made the basis of the Complaint filed by Complainant is known by the parties as "Seco Creek" (Contract No. 70B01C20R00000152 and referenced as "Seco Creek 70B01C20R00000200" within the subcontract between Beck and Spencer) (collectively referred to as the "Project"). The Subcontract obligated Beck to drill 48" shafts of 264 linear feet at the Seco Creek project. The Subcontract was agreed and signed by Ian Kolda and Matt Ewald, collectively, on behalf of Beck and Patrick Spencer on behalf of Spencer. **See Exhibit 1**. Respondent Westfield is a commercial surety that issued a payment bond that forms the basis of the underlying Complaint (Bond No. 090194T (the "Payment Bond" or "Bond")). The principal for this bond is a joint venture involving Spencer called Four States Border Solutions, LLC ("Four States"), Beck is an obligee, and Westfield is the obligor on those Bond. **See Exhibit 2**. Spencer is a party to the Four States Joint Venture (**See Exhibit 3**).

2. A dispute arose between Beck and Spencer as to whether or not Beck encountered rock drilling during the Projects consistent with the subcontract between the parties. If rock was encountered by Beck, Beck may be entitled to additional sums of money under the contract between Spencer and Beck. If Beck did not encounter rock drilling during the Projects, Beck is not entitled to additional payments under the Subcontract. **See Attachment A within Exhibit 1**. There exists a genuine dispute between Spencer and Beck as to whether or not Beck actually encountered rock drilling during the Projects. Spencer contends that Spencer paid Beck all amounts of money due under the Subcontract for completion of the drilling work without any payment for rock drilling.

3. The Subcontract contained an Article requiring arbitration of claims, disputes, and matters in question arising out of or relating, to the Agreement between the parties.

Specifically, Article 14.1 of the Agreement provides (emphasis added):

14.1 AGREEMENT TO ARBITRATE. ***All claims, disputes and matters in question arising out of, or relating to, this Agreement or the breach thereof***, except for claims which have been waived by the making or acceptance of final payment, claims which are the subject of Paragraph 6.2, and the claims described in Paragraph 14.2, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect unless the parties mutually agree otherwise. Notwithstanding other provisions in the Agreement, this agreement to arbitrate shall be governed by the Federal Arbitration Act. (*Emphasis Added*)

4. Unquestionably, the Complaint filed by Beck asserts a "claim, dispute, and matter in question arising out of, or relating to,[the Subcontract]".

5. On December 10, 2021, Beck (as the United States of America f/u/b/o A.H. Beck Foundation Co. Inc.) filed its Original Complaint against Westfield (the "Complaint"). The complaint seeks recovery from Westfield pursuant to the Payment Bond. (See Complaint Doc. 1). In the Complaint, Beck alleges that Spencer failed to pay Beck for certain work performed on its CBP project pursuant to the Subcontract. Beck further claims that Spencer did not fully compensate it for timely and properly completing its drilling work on the projects. See Complaint, ¶ 7, Doc. 1.

6. Contrary to the allegations in the Complaint, Spencer contends that it has paid all sums owed pursuant to the Subcontract and all sums justly due. Spencer and Westfield intend to dispute Beck's claims and allegations in its Complaint. The underlying dispute, though absent from the allegations in the Complaint, is whether or not Beck encountered rock during the projects. Beck has claimed they encountered rock while Spencer and Westfield dispute that claim.

7. Spencer has moved contemporaneously with this Unopposed Motion to Compel Arbitration and Stay the Litigation to intervene in this action Under Fed. R. Civ. P. 24. A true and

3

correct copy of the Spencer's Unopposed Motion to Intervene Pursuant to Fed. R. Civ. P. 24 is attached hereto as **Exhibit 4**.

8. Spencer and Westfield now move this Court to compel Beck to live up to its promise to arbitrate all disputes arising out of or relating to the Subcontract, and to stay this action pending resolution between Beck and Spencer.

**II.**
**Argument and Authorities**

**A. Federal and State Law Favor Arbitration Agreements**

9. "Under the Federal Arbitration Act, parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 527 (2019). The FAA "expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown,* 304 F.3d 469, 471 (5th Cir. 2002) (internal citation omitted). According to the FAA:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

10. The FAA "was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate" and to place such agreements "upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 478 (1989) (internal quotations and citations omitted).

### B. Applicable Legal Analysis

11. Relative to the instant Motion, courts follow a two-step process to determine whether a dispute must be arbitrated. *Kubala v. Supreme Prod. Servs., Inc.,* 830 F.3d 199, 201 (5th Cir. 2016). The first step involves the issue of contract formation. *Id.* Specifically, the court must determine whether the parties entered into a valid agreement to arbitrate some set of claims, and in this regard, ordinary principles of contract law apply. *Id.* at 201-02. If the court finds there is a valid arbitration agreement, the second step involves contract interpretation and specifically, whether the claims at issue in the litigation are covered by the arbitration agreement. *Id.* at 201.

12. "Ordinarily both steps are questions for the court." *Id.* (internal citation omitted). "But where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." Id. (internal citation omitted). "Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator." *Id.* at 202.

> Thus, if the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. It performs the first step—an analysis of contract formation—as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. If there is a delegation clause, the motion to compel arbitration should be granted….[1]

---

[1] *Id.* at 202. The court's opinion in *Kubala* recognized a limited exception for deciding the arbitrability question, despite the presence of a delegation clause, where the agreement that the arbitration agreement applied to a particular dispute was "wholly groundless." *Id*. at 202, n.1. This "wholly groundless" exception was explicitly abrogated by the U.S. Supreme Court in *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 528, 202 L. Ed. 2d 480 (2019). Thus, reference to this once limited exception is omitted from the excerpted text above.

**C. Federal Courts are Clear that Arbitration is Appropriate despite the filing of a Miller Act Lawsuit**

13. Federal courts consistently enforce arbitration provisions in subcontracts between a subcontractor and general contractor, even with a subcontractor's Miller Act claim pending against a surety. *See, e.g., U.S., for & on behalf of Portland Const. Co. v. Weiss Pollution Control Corp.,* 532 F.2d 1009 (5th Cir. 1976) (staying Miller Act case pending resolution of arbitration proceeding); *U.S. ex rel. Tindall Corp. v. Satterfield & Pontikes Const., Inc.,* SA-14-CV-33-XR, 2014 WL 819478, at *3 (W.D. Tex. Mar. 3, 2014).

14. Further, courts will compel a contractor and subcontractor to arbitration even if the subcontractor only names the surety in the underlying Miller Act lawsuit. *See U.S. ex rel. Milestone Tarant, LLC v. Fed. Ins. Co.,* 672 F. Supp. 2d 92, 100 (D.D.C. 2009) (enforcing subcontractor's arbitration clause and compelling general contractor and subcontractor to arbitration even though subcontractor's Miller Act suit was initially brought only against surety); see also *U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.,* 239 F.R.D. 404, 415 (W.D. Pa. 2006) (allowing general contractor to permissively intervene in Miller Act lawsuit against surety and granting contractor's motion to compel arbitration with subcontractor); *U.S. ex rel. MPA Const., Inc. v. XL Specialty Ins. Co.,* 349 F. Supp. 2d 934, 939 (D. Md. 2004) (finding that general contractor could intervene in Miller Act lawsuit brought only against surety, compelling contractor and subcontractor to arbitration and staying action pending resolution of arbitration); *U.S. for Use of DeLay & Daniels, Inc. v. Am. Emp. Ins. Co. of Mass.,* 290 F. Supp. 139 (D. S.C. 1968).

**D. Beck and Spencer Entered into a Valid Arbitration Agreement and Beck's Claims are Within the Scope of That Agreement**

15. Spencer and Beck entered into a valid and binding Subcontract that contains valid and enforceable dispute resolution and arbitration provisions. Beck cannot dispute the validity of the

6

Subcontract, because Beck mentions the Subcontract by name in its Complaint and acknowledges the scope of the Subcontracts. See Doc. 1, ¶ 5.

16. Pursuant to the Subcontract, Beck and Spencer entered into an agreement to arbitrate "***All claims, disputes and matters in question arising out of, or relating to, this Agreement or the breach thereof***, except for claims which have been waived by the making or acceptance of final payment, claims which are the subject of Paragraph 6.2, and the claims described in Paragraph 14.2, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, then in effect, unless the parties mutually agree otherwise. Notwithstanding other provisions in the Agreement, this agreement to arbitrate shall be governed by the Federal Arbitration Act. (*Emphasis Added*)". Article 14 to Exhibit 1.

17. Neither party will dispute that whether Beck hit rock while drilling, so as to trigger the increased price structure of the Subcontract, is a dispute or question ***"arising out of, or relating to, this [Subcontract]."*** And there is no real basis to dispute that Beck agreed to arbitrate precisely this type of Subcontract-based dispute.

18. Further, Westfield's liability as surety under the Miller Act bond is wholly intertwined and entirely dependent on whether Spencer, as a member of the joint venture who was the prime contractor, is liable under its Subcontract with Beck (which it is not). The parties agreed that Spencer's liability to Beck for a dispute arising out of or relating to this Subcontract would be decided in arbitration; because under black-letter suretyship law, Westfield is entitled to all rights and must honor all obligations of its principal, Four States (which includes Spencer), (*see. e.g.*, *First Gibraltar Bank v. Bradley,* 98 F.3d 1338 (5th Cir. 1996) (guarantors of loans have standing to assert defenses available to borrowers); *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1,* 908 S.W.2d 415, 419 (Tex. 1995) (Texas law generally recognizes that sureties are entitled to rely

7

upon all defenses available to their principal)). Westfield is also entitled to enforce the arbitration agreement between Beck and Spencer.

19. The claims raised by Beck in the Complaint and Spencer's defenses to those claims all arise out of "***disputes and matters in question arising out of, or relating to, this Agreement or the breach thereof***" as it relates to the Subcontract. As a result, the Court should compel Beck to comply with the Subcontract's dispute resolution and arbitration provisions.

**E. Likewise, Westfield Can Assert the Rights of Spencer to Enforce Arbitration**

20. Generally, under Texas law, the surety or obligor on a bond is entitled to assert all of the rights of its principal. *See e.g., Id.; Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 137, 83 S. Ct. 232, 235, 9 L. Ed. 2d 190 (1962). One of those rights is the right of Spencer to force Beck to arbitrate this claim because the claim arises out of the scope and payment provisions of the Subcontract (which is the subject of the Bond). Thus, Westfield can enforce Spencer's right to compel arbitration of this dispute.

21. Moreover, because under black-letter suretyship law, Spencer (as a party to the principal) will be obligated to reimburse the Westfield surety ( the obligor) for any amounts that Westfield surety becomes liable to claimant Beck (the obligee) (*See e.g., In re Tri-Union Dev. Corp.,* 314 B.R. 611, 619 (Bankr. S.D. Tex. 2004) (citing *Pearlman* that there surety is deemed entitled to reimbursement); *Hondo Oil & Gas Co. v. Tex. Crude Operator, Inc.,* 970 F.2d 1433, 1441 (5th Cir. 1992) (recognizing rights of indemnification within surety relationship)). Spencer's right to compel arbitration of the very same dispute would be lost if the Court were to permit Beck to litigate this claim with Westfield.

22. The Fifth Circuit has recognized there are instances when a non-signatory may enforce an arbitration agreement against a signatory. *Wood v. PennTex Res., L.P.,* 458 F. Supp. 2d 355, 365

8

(S.D. Tex. 2006), aff'd sub nom. *Wood v. Penntex Res. LP.,* 322 Fed. Appx. 410 (5th Cir. 2009). In *Wood* a non-signatory surety unsuccessfully attempted to enforce an arbitration agreement against a signatory subcontractor. However, in *Wood* the surety did not properly show the Court that an exception giving rise to enforcement by the non-signatory. Unlike the *Wood* case, Westfield is arguing to this Court that Beck cannot circumvent the arbitration agreement because it is a third-party beneficiary and Beck's claims against Spencer are so intertwined with its underlying suit. The dispute before this Court wholly arises from the Projects in this case is whether or not Beck is due money for encountering soil which required a rock auger for drilling. Whether or not Beck is entitled to damages on those claims will be determined by any liability of Spencer (which Spencer and Westfield deny).

23. The Fifth Circuit has reasoned that "it is more foreseeable, and thus more reasonable, that a party who has actually agreed in writing to arbitrate claims with someone might be compelled to broaden the scope of his agreement to include others." *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan,* 345 F.3d 347, 361 (5th Cir. 2003). The Fifth Circuit, in a tortious interference case, has concluded that a non-signatory may enforce an arbitration agreement by comparing the complaint (the operative facts for purposes of the motion to compel arbitration) with the distribution agreement (an exhibit to the complaint). *See Grigson v. Creative Artists Agency L.L.C.,* 210 F.3d 524, 529 (5th Cir. 2000). The Fifth Circuit reasoned that the claims were so intertwined and dependent upon a distribution agreement that the arbitration agreement should be given effect.

24. In this case, the Complaint filed by Beck and alleging Westfield's liability (which is denied), as surety for Four States (which includes Spencer as a member), is so intertwined and contingent on Spencer's liability for potential damages owed under the contract between Spencer

and Beck.  There is no basis for liability between Beck and Westfield, which does not intertwine the actions or conduct of Spencer (which is denied).

**F.  The Court Should Stay this Action Pending Resolution of the Arbitration**

25. The FAA requires that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Given the FAA's clear mandate, the Court should stay this action pending resolution of the arbitration.

26. Further, there is a "long history of Miller Act cases which resolve the tension between the Miller Act and the Federal Arbitration Act by staying the Miller Act claim pending arbitration of the underlying dispute." *U.S. ex rel. Tanner v. Daco Const., Inc.,* 38 F. Supp. 2d 1299, 1304–05 (N.D. Okla. 1999).  Other federal courts have likewise recognized that there is a "wealth of cases granting or upholding a stay of a Miller Act claim against a surety pending arbitration of the subcontractor's claims against the contractor." *United States v. Int'l Fid. Ins. Co.,* 232 F. Supp. 3d 1193, 1201 (S.D. Ala. 2017); *United States for use & benefit of Superior Steel, Inc. v. B.L. Harbert Int'l, LLC,* CV 119-173, 2020 WL 4227307, at *10 (S.D. Ga. July 23, 2020) ("Numerous cases support staying Miller Act claims against sureties pending arbitration of a subcontractor's claims against a contractor.").

27. More recently, the Courts within the Fifth Circuit have granted motions to compel arbitration in Miller Act cases and stayed the pending litigation.  *See CMH Mfg., Inc. v. Hensel Phelps Const. Co.,* SA-12-CV-1223-XR, 2014 WL 897341, at *3 (W.D. Tex. Mar. 5, 2014)*; U.S.*

10

*ex rel. Tindall Corp. v. Satterfield & Pontikes Const., Inc.,* SA-14-CV-33-XR, 2014 WL 819478, at *3 (W.D. Tex. Mar. 3, 2014);

28. Finally, a stay of this action promotes judicial economy and efficiency. The claims and defenses raised in this action will be comingled with the facts, circumstances, claims, and defenses being litigated in the arbitration proceeding. The issues in arbitration are the very same issues at play in this Miller Act claim and Surety Defendant's liability turns on Spencer's defenses and Beck's rights under the Subcontract. As a result, the arbitration will serve to resolve many of the claims and issues present in this action.

## III.
## Conclusion

WHEREFORE, Spencer Construction, LLC and Westfield Insurance Company of America, Inc. request that the Court grant their Unopposed Motion to Compel Arbitration and Stay the Litigation and compel Complainant, A.H. Beck Foundation Co. Inc., to participate in dispute resolution and arbitration as required by the Subcontract, and stay the entirety of this action against all parties until resolution of the arbitration proceedings.

Respectfully submitted,

 */s/ Brandon E. Strey*
Brandon E. Strey
State Bar No. 24084969
brandon.strey@ogletree.com
Tiffany Cox Stacy
State Bar No. 24050734
tiffany.cox@ogletree.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
112 East Pecan Street, Suite 2700
San Antonio, Texas 78205
210.354.1300 (Tel.)
210.277.2702 (Fax)

**ATTORNEYS FOR RESPONDENTS**

11

**CERTIFICATE OF CONFERENCE**

On January 12th, 2022, the undersigned counsel contacted counsel for Beck via e-mail regarding and enclosing the arbitration agreement and whether Beck would agree to submit to arbitration. Counsel for Beck is unopposed to the instant Motion.

*/s/ Brandon E. Strey*
Brandon E. Strey


**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of January, 2022, I electronically filed the foregoing with the Clerk of the Court, which will send notification to the following:

Sean B. McNelis
Devin Gabriel
McNelis + Associates, PLLC
143 W. Sunset Rd., Suite 200
San Antonio, Texas 78209
sean@mcnelisassociates.com
devin@mcnelisassociates.com

*/s/ Brandon E. Strey*
Brandon E. Strey

12